James D. **STOCKS, Plaintiff,**

v.

**Louis SULLIVAN, Secretary of Health and Human Services, Defendant.**

**No. 87–101–CIV–3.**

United States District Court,
E.D. North Carolina,
Fayetteville Division.

July 5, 1989.

Charles T. Hall, Raleigh, N.C., for plaintiff.

Thomas Swaim, Asst. U.S. Atty., Raleigh, N.C., for defendant.

## ORDER

MALCOLM J. HOWARD, District Judge.

This matter comes before the court on the United States Magistrate's memorandum and recommendation, filed May 11, 1989, to which plaintiff, through counsel, has filed his objections. Defendant states no objections.

The court's independent review of the record in the case has led to the conclusion that the Magistrate's recommendation is correct and in accordance with law and should, therefore, be accepted by the court. Accordingly, the same is hereby adopted by the court as its own, and for the reasons stated therein it is now

ORDERED that a total fee award of Three Thousand One Hundred Fifty–One Dollars and Twenty–Five Cents ($3,151.25) covering reasonable attorney fees of Three Thousand One Hundred Thirty–Three Dollars and Seventy–Five Cents ($3,133.75) (27.25 hours × $115.00 per hour) and paralegal time (.5 hours × $35.00 per hour) be paid by the Secretary out of retained funds with the balance remitted to claimant.

## MEMORANDUM AND RECOMMENDATION

Filed May 11, 1989.

WALLACE W. DIXON, United States Magistrate.

This matter comes before the court on a motion for the approval of attorney fees in a social security disability case. Plaintiff James D. Stocks filed a civil action on December 9, 1987, seeking to reverse an administrative denial of social security benefits. On July 28, 1988, the court entered an order reversing the Secretary's final decision and ordering the payment of benefits to plaintiff. The Secretary moved to alter the judgment pursuant to Federal Rule of Civil Procedure 59(e). This motion was denied on September 6, 1988.

On August 26, 1988, plaintiff filed a petition for attorney fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412 (EAJA). An agreement was reached between the parties, however, whereby plaintiff would withdraw the EAJA petition in exchange for the Secretary's waiver of appeal rights as to Mr. Stocks' entitlement to benefits. The withdrawal of the EAJA petition was made without prejudice to any future motion for approval of attorney fees under the Social Security Act. Plaintiff filed the current motion under 42 U.S.C. § 406(b) on December 7, 1988.

The Social Security Act provides for the payment of attorney fees when a claimant prevails in an action for benefits as follows:

Whenever a court renders a judgment favorable to a claimant under this subchapter who was represented before the court by an attorney, the court may determine and allow as part of its judgment a reasonable fee for such representation, not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled by reason of such judgment, and the Secretary may, notwithstanding the provisions of section 405(i) of this title, certify the amount of such fee for payment to such attorney out of, and not in addition to, the amount of such past-due benefits. In case of any such judgment, no other fee may be payable or certified for payment for such representation except as provided in this paragraph.

42 U.S.C. § 406(b)(1) (1983). This provision for fees under § 406(b)(1) only compensates for services that are rendered before a court, and not for services rendered at the administrative level. *Whitt v. Califano,* 601 F.2d 160, 161–62 (4th Cir.1979).

Section 406(b) was enacted to serve a dual purpose. It was, first and foremost, a means of expressing congressional concern over the potential dilution of benefits to social security recipients by the payment of "inordinately large fees" to attorneys. *Watford v. Heckler,* 765 F.2d 1562, 1566 (11th Cir.1985); *Wolverton v. Heckler,* 726 F.2d 580, 582 (9th Cir.1984). Coextensive with the desire to limit the size of fee awards, however, was the need to insure that attorneys representing successful benefit claimants receive some fees. *Watford,* 765 F.2d at 1566. The responsibility of determining the reasonableness of a fee in each case rests with the court. *Craig v. Secretary, Department of Health and Human Services,* 864 F.2d 324, 327 (4th Cir. 1989).

It should be noted at the outset that while § 406(b)(1) provides for a maximum fee award of 25% of the past-due benefits, this does not mean that the successful claimant's attorney is automatically entitled to this amount. It is well recognized that, in many cases, a reasonable fee will be less than the statutory maximum. *Redden v. Celebrezze,* 370 F.2d 373, 376 (4th Cir.1966); *In re Colasurd,* 819 F.2d 149, 150 (6th Cir.1987). Courts are also in agreement that routine approval of the

statutory maximum fee award is to be avoided. *See, e.g., Snizaski v. Heckler,* 602 F.Supp. 1119, 1122 (W.D.Pa.1985); *Edenton v. Heckler,* 611 F.Supp. 264, 265 (D.Md.1985). It must be remembered that, while the attorney is entitled to a reasonable compensation for his services, any fee awarded under § 406(b)(1) will come out of the claimant's benefits. The benefits are meant to support the claimant and his dependents and not to enrich attorneys. *Redden,* 370 F.2d at 376.

In the instant case, plaintiff's motion for attorney fees requests approval of $5,128.15 and this amount is represented to be 25% of plaintiff's past-due benefits (Plaintiff's Memorandum at 1). Defendant, however, asserts that 25% of the past-due benefits withheld totals $5,009.15 (Defendant's Memorandum at 2). Although I note the disagreement over what dollar amount constitutes the statutory maximum award, a resolution of this particular fact question will not be needed. As can be seen from the following analysis, the case *sub judice* presents a situation in which a reasonable attorney fee is less than the maximum allowed under § 406(b).

The determination of a reasonable fee is guided by the factors set forth in *Johnson v. Georgia Highway Express,* 488 F.2d 714 (5th Cir.1974) and which have been adopted for use in this circuit.[1] *Blankenship v. Schweiker,* 676 F.2d 116, 117 (4th Cir.1982). In beginning the calculation of a reasonable fee award, the initial step is the determination of the "lodestar" amount. *Wells v. Bowen,* 855 F.2d 37, 43 (2d Cir.1988); *Craig,* 864 F.2d at 327. The lodestar is defined as the product of the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. *Craig,* 864 F.2d at 327; *see also Hensley v.*

*Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). In determining the lodestar figure, certain, if not most, of the twelve *Johnson* factors are subsumed within that calculation. *Daly v. Hill,* 790 F.2d 1071, 1078 (4th Cir.1986). The novelty and complexity of the issues will be a component of the determination of a reasonable number of hours, and factors relating to the quality of representation will be reflected in the hourly rate. *Blum v. Stenson,* 465 U.S. 886, 898–99, 104 S.Ct. 1541, 1548–49, 79 L.Ed.2d 891 (1984). Once the lodestar determination has been made, the court must then determine whether the circumstances warrant adjustment of the lodestar. *See Daly,* 790 F.2d at 1078.

## THE REASONABLE NUMBER OF HOURS

Plaintiff's counsel has submitted an affidavit claiming the expenditure of 42.75 hours of attorney time, and .5 hours of paralegal time, while this case was pending before the district court. The defendant, however, correctly notes that 15.5 of the claimed attorney hours are billed for time spent after the withdrawal of the EAJA petition on October 17, 1988 (Defendant's Memorandum at 3). This is time apparently spent by counsel in preparing the current motion for fees. Plaintiff's counsel has admitted including such time in his calculation of hours (Plaintiff's Memorandum at 7) and does not deny that the 15.5 hours in question were, in fact, spent on preparing and briefing the current motion (Plaintiff's Supplemental Memorandum at 1–2).

Under the guiding Fourth Circuit precedent, time spent in the preparation of a social security fee petition is not compensable. *Whitt v. Califano,* 601 F.2d 160, 161 n. 2 (4th Cir.1979); *Craig,* 864 F.2d at 328.

---

**1.** The twelve factors identified in *Johnson* which should guide a district court's discretion in calculating a fee award are as follows:

(1) the time and labor required;
(2) the novelty and difficulty of the questions;
(3) the skill requisite to properly perform the legal service;
(4) the preclusion of other employment by the attorney due to acceptance of the case;
(5) the customary fee;
(6) whether the fee is fixed or contingent;

(7) time limitations imposed by the client or the circumstances;
(8) the amount involved and the results obtained;
(9) the experience, reputation, and ability of the attorney;
(10) the "undesirability" of the case;
(11) the nature and length of the professional relationship with the client; and,
(12) awards in similar cases.

488 F.2d at 717–19.

The rationale behind denying recovery for this effort is that this time is not regarded as beneficial to the client. *Snizaski,* 602 F.Supp. at 1122. The fact that any fee award under § 406(b) will come out of the claimant's fund, as opposed to being assessed against an opposing party, distinguishes social security fees from those under fee shifting statutes or rules. *See Strickland v. Bowen,* 669 F.Supp. 1086, 1088 (M.D.Ga.1987) (where award would be assessed against opposing party, time spent on fee petition is recoverable). I therefore determine that the number of hours submitted by plaintiff must be reduced by 15.5.

■ The remaining 27.25 hours, however, are a reasonable amount of time under the instant facts. This appears to be a reasonable amount of time to prepare a social security appeal and to prepare the briefs and papers submitted in this case. I also note that some of this time was spent in preparation of the EAJA petition for fees. This time, however, proved beneficial to the claimant, since the withdrawal of the petition obviated further appeal on the claimant's entitlement to benefits. I further find that the claimed amount of paralegal time is reasonable for this case.

## THE REASONABLE HOURLY RATE

■ The Fourth Circuit has recently stated that "[a] reasonable rate of compensation is the prevailing market rate in the relevant community for similar services." *Craig,* 864 F.2d at 328. The market rate for similar services may be established by a number of methods. These include affidavits reciting the precise fees that attorneys with similar qualifications have received in comparable cases; information concerning recent fee awards by courts in comparable cases; specific evidence of counsel's own actual billing practice or other evidence of the actual rates which counsel can command in the market. *Spell v. McDaniel,* 824 F.2d 1380, 1402 (4th Cir.1987).

Counsel for plaintiff has submitted statistical data in the form of an economic survey conducted by the North Carolina Bar Association. The data submitted consists of a chart which shows that North Carolina attorneys, with similar length of practice, and who operate in similar sized firms, in comparable population centers, charge an average hourly rate of $94.00. The evidence also contains a chart of typical hourly rates for various types of practice (although not covering social security practice) that ranges from $78.00, for collections, to $100.00 for securities practice. It should be noted that Worker's Compensation practice, which appears to be the most closely analogous category to a social security practice, has a state-wide average of $81.00 per hour. The field of administrative law commands an average of $90.00 per hour. Although this evidence does not specifically pertain to social security practice, it appears to be sufficient to qualify as "other evidence of the actual rates that counsel can command in the marketplace." *Spell,* 824 F.2d at 1402. I find that based on the evidence submitted, a reasonable base rate of hourly compensation for current social security practice will be approximately $85.00.

■ This determination, however, does not conclude the process of ascertaining a reasonable hourly rate. Several other *Johnson* factors are appropriately considered at this point. I note that the skill required to properly handle this case was not greater than what is usually required of counsel. Similarly, I find that, given the nature of counsel's practice (admittedly devoted largely to social security practice) counsel was not precluded from other employment by acceptance of this case. No evidence of any undue time pressures exists in this case, nor are social security cases considered particularly undesirable. It also does not appear that the length or nature of the professional relationship in this case is greater than that typically involved in a case of this type. None of these *Johnson* factors, therefore, warrants raising the base hourly rate.

Other factors, however, do appear to justify some increase in the base rate. I note that plaintiff's counsel obtained a recovery for his client of over $20,000.00 in past-due benefits, and expedited the client's receipt

of the benefits, by bargaining the EAJA petition for the Secretary's waiver of appeal. I also note that plaintiff's counsel possesses a great deal of experience in the area of social security practice. He has served as an officer of the National Organization of Social Security Claimant's Representatives and has both spoken frequently and professionally published on this area of the law. These factors should be given weight and, accordingly, I find that they warrant raising the hourly rate to a figure of $100.00. The economic survey also noted that the average hourly rate for paralegal services is $35.00. Without further discussion, I find that this is a reasonable hourly rate.

ENHANCEMENT FOR CONTINGENCY

■ Plaintiff's counsel has requested that there be an adjustment in the fee on account of its contingency nature. Counsel had agreed to perform services on a contingency basis and was dependent on claimant's recovery of benefits in order to receive a fee. Counsel essentially argues that the fact he faced a risk of no compensation, in the event he did not win, justifies increasing the fee amount. Defendant opposes the enhancement for contingency, stating that such enhancement must be reserved for cases involving "exceptional circumstances" which do not exist in the instant case.

As both parties have correctly noted, the concept of fee enhancement based on the factor of contingency has received a confused treatment from the courts, and a great deal of uncertainty exists in this area. Since I believe that some enhancement for contingency is proper, although not to the degree sought by plaintiff, it will be necessary to conduct an analysis of the current authority dealing with this issue.

The Fourth Circuit has long recognized that the factor of contingency of an attorney's compensation in social security cases is to be properly considered in ascertaining a reasonable fee. In *McKittrick v. Gardner*, 378 F.2d 872 (4th Cir.1967), the court stated:

While the judge must approve the reasonableness of the fee in every case and

may not unquestioningly endorse contingent fee contracts providing for a fee of not more than twenty-five per cent of the accrued benefits, there is no prohibition against his consideration of the contingency of compensation. Availability of lawyers to such claimants is of the highest importance, and if a lawyer is to receive no compensation unless there is an award, his compensation is contingent whether or not he has a contract that says so. Most of the disability claimants have no other resources for the payment of fees. The contingency of compensation, whether it stems from an employment contract or results from the claimant's indigency, is highly relevant in the appraisal of the reasonableness of any fee claim. The effective lawyer will not win all of his cases, and any determination of the reasonableness of his fees in those cases in which his client prevails must take account of the lawyer's risk of receiving nothing for his services. Charges on the basis of a minimal hourly rate are surely inappropriate for a lawyer who has performed creditably when payment of any fee is so uncertain.

378 F.2d at 875. The nature of a fee, whether fixed or contingent, is also recognized as one of the factors in a *Johnson* analysis.

The propriety of enhancing a lodestar calculation for certain factors, including contingency, has been the subject of decisions under a variety of fee award statutes. In *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), an action was brought for attorney fees under 42 U.S.C. § 1988, and the issue before the Court was whether a plaintiff who prevailed on only a part of his claims could recover attorney fees for the time spent in pursuing unsuccessful claims in the same action. The Supreme Court noted that the lodestar was the most useful starting point for determining what constituted a reasonable fee. 461 U.S. at 433, 103 S.Ct. at 1939. The lodestar determination, however, was not the end of the process. The *Hensley* court noted that other considerations could lead to an adjustment of the fee amount,

including the factor of results obtained. The fee, under *Hensley,* could be adjusted up or down, depending upon the scope of relief obtained and the related nature of the unsuccessful claims to those accepted by the trial court. *Id.,* 461 U.S. at 440, 103 S.Ct. at 1943.

In *Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), the Court was again faced with a § 1988 action for fees. The plaintiff's attorneys in *Blum* sought recovery for 809 hours of work at hourly rates of $95–105. The total fee, however, was increased by 50% by the district court. In so doing, the court held that the increase was justified because of the quality of representation, the complexity of the issues, the riskiness of success, and the great benefit achieved. 465 U.S. at 891, 104 S.Ct. at 1545. The Second Circuit affirmed this decision without opinion and the Supreme Court granted certiorari to determine, *inter alia,* if the district court had abused its discretion in increasing the fee award above the market rate.

The *Blum* analysis of fee awards under § 1988 led the Court to agree with *Hensley* that enhanced awards could be justified in some cases of "exceptional success." 465 U.S. at 897, 104 S.Ct. at 1548. *Blum's* analysis of fee enhancement commenced with a presumption that a correctly determined lodestar was the reasonable fee contemplated by § 1988. 465 U.S. at 897, 104 S.Ct. at 1548. The burden of proving the need for any enhancement rested with the fee applicant. The Court noted that no evidence had been presented by the applicant to justify fee enhancement and that the brief to the district court merely stated that enhancement was justified because of the novelty of the issues, complexity of the litigation, and the great benefit achieved. These reasons were accepted by the district court and the court itself added the "riskiness" of the lawsuit as a factor. 465 U.S. at 898, 104 S.Ct. at 1548. An analysis by the Supreme Court, however, proved that none of the stated reasons justified enhancement.

Specifically, the Court noted that several of these factors were already included in the lodestar calculation. The novelty and complexity of the issues was presumed to be reflected in the number of billable hours, and the quality of representation was presumed to be a part of the calculation of the hourly rate. 465 U.S. at 898–99, 104 S.Ct. at 1549. The "results obtained" were also deemed to be a part of the normal lodestar calculation. The Court also determined that an enhancement for the riskiness of the case was inappropriate. Significantly, however, the reason for the denial of this enhancement was based on the lack of evidentiary support to justify it. 465 U.S. at 901, 104 S.Ct. at 1550. The Court specifically left open the issue of whether enhancement was ever proper for the risk of not prevailing on a § 1983 claim. *Id.,* 104 S.Ct. at 1550 n. 17.

The issue of enhancement for assuming a risk of loss was addressed by the Court in *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987). This was an action brought under the Clean Air Act which provides for an award of attorney fees to the prevailing party. The district court divided the work performed by prevailing counsel into nine phases and computed a lodestar for each phase. The lodestar for certain phases were then doubled to reflect the risk of not prevailing on these issues. 107 S.Ct. at 3081.

In a splintered opinion, the Court ultimately determined that these enhancements were improper. Four justices felt that enhancement multipliers were improper under most fee shifting statutes, while four other justices believed that Congress had intended for the contingency factors to remain as a consideration in determining a reasonable fee. Justice O'Connor's concurrence fell on both sides and constitutes the pivotal point of the opinion. 107 S.Ct. at 3089 (*O'Connor, J.,* concurring in part and concurring in the judgment). Under Justice O'Connor's analysis, Congress did not intend to eliminate contingency consideration from the reasonable fee determination under the fee shifting statutes, but she nevertheless determined that risk enhancement was improper in this case.

Justice O'Connor sets out a three-part method for the guidance of district courts in considering contingency factors. First, a court must ascertain what the effect of a contingency is in a particular market, thus enabling courts to uniformly treat contingency cases as a class. Second, the applicant must demonstrate the degree to which the market compensates for contingency, but no enhancement for risk should be allowed unless it could be shown that the prevailing party would have faced substantial difficulty in locating counsel in the relevant market without the use of an enhancement. 107 S.Ct. at 3090–91. Finally, all risks that are unique to the particular case are not to be used as enhancement factors, but are to be included within the lodestar calculation. *Id.* at 3091.

In the instant case, defendant makes reference to an unpublished decision of a Fourth Circuit panel which essentially adopted Justice O'Connor's rationale in a social security fee case. *In re Charles Hall,* [854 F.2d 1317 (table)] No. 89–3810 (4th Cir. Aug. 5, 1988) (unpublished decision). In a *per curiam* opinion, the Fourth Circuit affirmed a district court's denial of lodestar enhancement on the basis of contingency. The district court stated that it had included contingency considerations in ascertaining the lodestar amount and did not believe any further enhancement was appropriate. The Fourth Circuit agreed, stating that contingency factors should be considered in two separate instances. First, any particular risks associated with a case are to be considered in computing the lodestar. And, a further contingency multiplier is to be used where "exceptional circumstances" are shown whereby the litigant would have faced substantial difficulty in finding counsel absent the use of a contingency multiplier. *Id.,* slip op. at 3.

The most recent decision of the Fourth Circuit on the role of the contingency factor in social security fee determination is *Craig v. Secretary, Department of Health and Human Services,* 864 F.2d 324 (4th Cir.1989). In *Craig,* the district court had approved a fee of 25% of past-due benefits. That court believed that the fee was presumptively reasonable and was the amount agreed upon in the contingency fee contract. The Fourth Circuit vacated and remanded the decision on the grounds that the district court had failed to properly explain its reasons for granting the fee in question.

The contingency factor played an important role in the *Craig* decision. As in the instant case, the attorney argued for recognition of the contingency fee agreement and a recovery of the full statutory amount. The Secretary argued that no enhancement was appropriate and the attorney should be limited to a lodestar fee. The Fourth Circuit regarded both positions as incorrect and stated that the attorney should not be limited to a "bare bones, lodestar fee." Rather, the attorney was entitled to have the fee enhanced by factors of contingency and delay.

The Secretary in *Craig* relied on *Delaware Valley* in attempting to persuade the court to deny contingency enhancement in social security cases. The *Craig* court, however, did not find this argument to be persuasive. The court stated:

> We have long recognized that the contingent nature of fees in social security disability cases is a factor that courts may consider in allowing fees. *See McKittrick,* 378 F.2d at 875–76. As we pointed out in that case, availability of lawyers to disability claimants is important and most claimants have no resources to pay counsel other than through the possibility of receiving benefits. In concert with the Second and Third Circuits, we conclude that *Delaware Valley* does not preclude using a contingency factor to enhance a lodestar fee in a social security case. *See Wells v. Bowen,* 855 F.2d 37, 43–46 (2d Cir. 1988); *Coup v. Heckler,* 834 F.2d 313, 320–25 (3d Cir.1987). As these cases emphasize, *Delaware Valley* involved a fee shifting statute in which the defendants had no contractual relations with the plaintiffs' attorneys. In fee-shifting situations, the statute is the authority for the imposition of fees on one's adversary. But in social security cases the contract between the claimant and his attorney

for a contingent fee is the source of compensation, and section 406 is a statutory interference with the relationship of attorney and client. *See Coup,* 834 F.2d at 324. A court may give effect to the agreement for a contingent fee, limiting it, however, by the statutory requirements that it be reasonable and not in excess of 25 percent of past-due benefits. We therefore conclude that the considerations that prompted us in *McKittrick* to approve contingency enhancement remain valid.

*Craig,* 864 F.2d at 327–28. On remand, the court instructed the district court in the exercise of its discretion, as follows:

> The court properly recognized that the contingent nature of the fee justified enhancement, but it did not disclose the increase that it attributed to this factor. On appeal the parties have neither briefed nor argued to what extent a lodestar fee should be enhanced by the contingency of compensation. We therefore leave in the first instance this issue to the district court, which may request counsels' views and if need be conduct an evidentiary hearing. It is sufficient for us to note at this stage of the proceedings that the primary consideration to take into account is the attorney's risk of receiving nothing for his services. *See McKittrick,* 378 F.2d at 875. Whether this risk should be evaluated for social security cases as a class, as Justice O'Connor suggests, or on the basis of the individual case pending before the court, as Justice Blackmun suggests, or by some other means, presents a question that can best be addressed by the district court.

*Id.* at 328. The *Craig* decision, therefore, mandates that an attorney is entitled to be compensated for undertaking the risk of nonpayment by entering into a contingency fee agreement.

In ascertaining the weight to be given the contingency factor, this court looks primarily at the existence of a contingency fee contract in this case. It appears that much of the confusion which has arisen in the debate concerning the consideration of the contingency factor revolves around the difficulty in assessing the degree of risk in a particular case. This was, of course, one of the primary concerns of the plurality opinion in *Delaware Valley.* *See* 107 S.Ct. at 3084–85. As both Justice O'Connor and the dissenters indicate, however, this should not be the primary focus for the contingency consideration. As previously noted, Justice O'Connor would subsume all factors relevant to the particular riskiness of a case in the lodestar calculation, and would utilize a further contingency enhancement in certain limited circumstances. Contingency fee enhancement, under her approach, should treat contingency cases as a class and should be based largely on how the relevant market provides for greater compensation in contingency fee cases. 107 S.Ct. at 3090.

The dissenting opinion recognized that the contingency factor acted as a premium to compensate for the risk of nonpayment. *Id.* at 3092 (*Blackmun, J.,* dissenting). This enhancement, under Justice Blackmun's view, was not dependent upon the degree of risk presented by a particular case. It is, rather, an attempt "to place contingent employment, *as a whole,* on roughly the same economic footing as noncontingent practice." *Id.* at 3097. This type of risk premium is necessary to insure the availability of adequate representation since, all other things being equal, attorneys will prefer the certainty of fixed fee cases to the vagaries of contingent practice. In short, the enhancement of fees by a contingency allowance is required to make those cases competitive with fixed fee cases. It should also be noted, however, that Justice Blackmun's opinion goes on to recognize that a further enhancement may be appropriate where an ¹individual case possesses a unique "legal rush" that creates an economic disincentive beyond the fact of mere contingency. *Id.* at 3100.

In the instant case, this court views the consideration of the contingent nature of the fee contract as a means of attempting to equalize contingent and fixed fee arrangements. As the Fourth Circuit noted in *Craig,* § 406(b) acts as a statutory interference with the relationship of attorney

and client. 864 F.2d at 328. It has similarly been stated that contingency enhancement in social security cases recognizes that a client is willing to pay more to induce an attorney to take a case where there was a risk of nonpayment. *Wells v. Bowen*, 855 F.2d 37, 45 (2d Cir.1988) *citing Coup v. Heckler*, 834 F.2d 313, 324 (3rd Cir.1987).

It must be emphasized that this court is not attempting to engage in a determination of the particular risks that may have been associated with this case. The focus, rather, must be on utilizing some type of risk premium that helps to generally balance contingent and fixed fees. I am of the opinion that the nature of the fee agreement, as one of the twelve *Johnson* factors, can be utilized in fixing the reasonable hourly rate, under the circumstances before the court.

This is not to say that further enhancement would never be proper in certain circumstances. No evidence, however, has been presented as to any unique risks present in this case and, therefore, this issue need not be decided today. It is evident that there is some risk of nonpayment in social security cases. Plaintiff has pointed to evidence that has been noted by other courts to demonstrate that such a risk exists. *See Wells*, 855 F.2d at 45 n. 1 (table showing the percentage of cases that ultimately achieve successful results, either by reversal or on remand, to be less than 50% in 1987). Although these figures are not clearly limited to cases which would be covered by § 406(b), they nevertheless indicate that there is some risk present in social security litigation. Here, the attorney and client agreed to deal with this risk *via* the use of a contingency fee contract, and it is the contractual expectations of the parties that must be given some weight in the fee calculation.

The consideration of a contingency fee agreement, however, must be balanced against the statutory mandate that the court must limit the fee to a reasonable amount. Unfortunately, the *Craig* decision gives little real instruction on how a court should exercise its discretion in performing this balancing function. *See Craig*, 864 F.2d at 328. I note that in the decision of *Edenton v. Heckler*, 611 F.Supp. 264 (D.Md.1985), counsel in a social security case sought a 25% maximum statutory award which would have resulted in a fee that was equivalent to a $250.00 hourly rate. The court observed that such a rate would be inappropriate, even in cases involving contingency. 611 F.Supp. at 265. In the instant case, if the full statutory award were approved, the attorney's fee would be the equivalent of an hourly rate exceeding $180.00. I find that this fee is too high and surpasses the standard of reasonableness mandated by § 406(b). A proper balance can be struck in the instant case by raising the hourly rate by $15.00. This gives weight to the generally recognized proposition that a contingency fee will generate the equivalent of a higher hourly rate for the successful attorney. I believe that it also results in a fee award that does not border on the extravagant or unreasonable for social security representation. In reaching this decision, the court notes that it is adopting a middle position in the debate over the use of contingency enhancement. I am basically in agreement with Justice O'Connor's position that the individual risks of a case can be reflected in the lodestar. I also agree with the *Delaware Valley* dissent that a risk premium for accepting a fee on a contingency basis can be computed as part of an hourly rate calculation. *See* 107 S.Ct. at 3092.

This approach essentially operates as an expansion of the lodestar concept. As Justice Blackmun observed, however:

> The lodestar, however, was designed to simplify, not to circumvent, application of the *Johnson* factors where appropriate. *See Copeland v. Marshall*, 205 U.S. App.D.C. 390, 400, 641 F.2d 880, 890 (1980) (*en banc*); Berger, [*Court Awarded Attorney's Fees: What Is "Reasonable"?*, 126 U.Pa.L.Rev. 281 (1977)] at 286–87. Thus, a statutory fee cannot be computed solely by reference to rates charged by corporate firms, which obtain many payments from their clients through monthly bilings (sic). Rather, in order to arrive at a "reason-

able" attorney's fee, a court must incorporate a premium for the risk of nonrecovery, for the delay in payment, and for any economic risks aggravated by the contingency of payment, at a level similar to the premium incorporated in market rates. The risk premium can be reflected in the hourly rate that goes into the lodestar calculation, or, if the hourly rate does not include consideration of risk, in an enhancement of the lodestar. *See Blum v. Stenson*, 465 U.S. at 903, 104 S.Ct. at 1551 (concurring opinion). Under either approach, adding a premium simply brings the fee up to the "reasonable" level contemplated by Congress.

*Id.* 107 S.Ct. at 3094 (footnote omitted).

This opinion adopts a $15.00 increase as an appropriate premium increase for the instant case. I note, however, that this may not be the appropriate amount in every case. Further study may indicate changes in the relevant market that would suggest a different premium amount is appropriate. I am disinclined at this point, however, to require further evidentiary development on this point. Requiring counsel to develop and submit detailed statistical data, as to the market rate comparison between fixed and contingent fees, might result in a bit more precision. It would, however, force plaintiff's counsel to expend greater amounts of time for which no compensation will be available. The interests of fairness would, therefore, not be served by such a requirement. I only note that in future cases, the court may expect greater clarification on the market relationship between fixed and contingent fees.

## ENHANCEMENT FOR DELAY

The *Craig* opinion did follow *Delaware Valley* in recognizing that the factor of delay is separate from that of contingency in computing a fee award. *Craig*, 864 F.2d at 328. Should the court find that enhancement for delay is appropriate, *Craig* states that the enhancement for delay may be computed by following 28 U.S.C. § 1961. *Id.* As with other parts of its opinion, however, the *Craig* court gave little indication as to what it meant by that direction.

Section 1961, of course, deals with the imposition of post-judgment interest in civil judgments before the district courts. It has been utilized in fee awards under 42 U.S.C. § 1988, and interest is usually granted from the date of entry of the judgment awarding fees. *See, e.g., Spell v. McDaniel*, 616 F.Supp. 1069, 1115 (E.D.N.C.1985) *affirmed in part, vacated and remanded in part* 824 F.2d 1380 (4th Cir. 1987), *cert. denied,* — U.S. ——, 108 S.Ct. 752, 98 L.Ed.2d 765 (1988). In the instant case, there has been no award of fees and the only judgment has been the order awarding benefits to the claimant.

Plaintiff urges an increase in the fee award to compensate for the delay that exists between the time the services were actually rendered and the time when payment will be received (Plaintiff's Memorandum at 15–16). Defendant, of course, opposes any delay enhancement. In the instant case, this court finds itself disinclined to grant any further enhancement on the basis of delay.

The court notes that a certain amount of delay in the receipt of attorney fees is an innate part of a social security practice. The court is charged by statute with the responsibility of fixing a reasonable fee, and this is a type of delay over which the client has no control. The Fourth Circuit's cursory treatment of delay enhancement in *Craig* indicates that the district court still possesses discretion as to whether delay constitutes an appropriate reason for enhancement. *See* 864 F.2d at 328 (court *may* also consider delay in receipt of the fee as an additional reason for enhancement). This court is loath to further deplete a claimant's fund by enhancing the attorney's fee for a delay factor wholly outside of the claimant's control. The client may be perfectly willing to see the attorney receive immediate payment of the statutory maximum, yet this desire will be frustrated by the Secretary's challenge of the claimed fee and the court's performance of its statutory duty. On this basis, I

do not find that delay constitutes an appropriate enhancement factor in this case.

Alternatively, I would note that the court approves a fee of Three Thousand One Hundred Thirty–Three Dollars and Seventy–Five Cents ($3,133.75) based on the reasonable hourly rate of $115.00 times the compensable number of hours, which is 27.25. I find that this fee will constitute a reasonable attorney fee without further enhancement.

CONCLUSION

I, therefore, RECOMMEND that the district court approve a total fee award of Three Thousand One Hundred Fifty–One Dollars and Twenty–Five Cents ($3,151.25). This award will cover reasonable attorney fees of Three Thousand One Hundred Thirty–Three Dollars and Seventy–Five Cents ($3,133.75) (27.25 hours × $115.00 per hour) and paralegal time (.5 hours × $35.00 per hour). The Secretary shall pay this amount out of the retained funds and shall remit the balance to the claimant.